FILED
 2005 Jun-13  AM 09:20
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KING DEVELOPMENT and REALTY, INC.,** } } } | |
| **Plaintiff,** } } | |
| v.                                  } } | **CASE NO. CV 04-B-0828-S** |
| **NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,** } } } } | |
| **Defendant.** } | |

MEMORANDUM OPINION

On May 5, 2005, the court heard oral argument on Defendant's Motion for Summary Judgement. (Doc. 14.)[1] This case arises out of the loss of rental income for a four-unit apartment house.[2] Plaintiff [3] has brought claims for breach of contract and bad faith refusal to pay. Following oral argument the court informed counsel of its intention to deny defendant's Motion for Summary Judgment on plaintiff's claim for breach of contract and to grant defendant's Motion for Summary Judgment as to plaintiff's claim

---

[1] Reference to document number, ["Doc."], refers to the number assigned to each document filed in the court's record.

[2] Defendant removed this case, which contains purely state-law claims, from the Circuit Court of Jefferson County. (Doc.1.) Plaintiff alleges only $22,800 in compensatory damages, but requests $200,000 in punitive damages for the bad faith claim.

[3] The Complaint listed three plaintiffs, Chris King, Talon Construction Company, Inc., and King Development Realty, Inc. The parties agree that the correct plaintiff should be King Development and Realty, Inc.

1

for bad faith. This opinion sets forth for the record the rationale for the court's oral ruling.

**A.    Factual Summary**

On March 21, 2002, plaintiff's property was damaged by a fire. (Compl. ¶ 12.) It is undisputed that defendant's insurance policy covered the property at that time. Among other things, this policy covered loss of business income that occurs within twelve months of the date of direct physical loss or damage.[4] Plaintiff's property was a house that was divided into rental units, so the rental income would be the sole business income from the property.

On March 25, 2002, Nationwide sent a check to Chris King, owner of King Development and Realty, Inc., after completing an estimate on the damaged property. One week later, King disputed that estimate as too low. A Nationwide agent re-inspected the property the next day and increased his estimate based on his new findings. A supplemental check was issued on April 5, 2002. On April 25, 2002, King disputed the new estimate.

Also on March 25, 2002, Chris King, on behalf of the plaintiff, agreed to provide Nationwide with copies of the leases for the damaged units. (Def.'s Ex. 2 at 4.) On April 1, 2002, a Nationwide claims representative sent a letter to King again requesting those leases. (*Id.* at 6; Def.'s Ex. 6.) On April 26, 2002, King told Nationwide that he had

---

    [4]    The policy also covered property damage, but plaintiff's property damage claim was settled prior to suit.

three higher estimates for repairs and said that he would provide Nationwide with those estimates. (Def.'s Ex. 2 at 8.) The parties do not agree on when these estimates were ultimately received by Nationwide.

In a letter dated May 2, 2002, plaintiff was reminded of his duty to take reasonable steps to prevent further property damage. (Def.'s Ex. 7.) This letter again requested copies of the estimates plaintiff had obtained.

Nationwide issued a check for lost business income on May 17, 2002, which covered three months rent on two of the units. (Pl. Ex. 7.) The letter accompanying that check stated that "[t]he three months period should provide an adequate amount of time to repair the units." (*Id.*) King disputed the amount of the estimated lost income and never cashed Nationwide's check. (Pl. Resp. to Mot. for Summ. J. and Br. in Opp'n to Mot. for Summ. J. ("Pl. Br.").)

On or about July 30, 2002, a Nationwide agent returned a phone call from an attorney for King. The attorney, Francois Blaudeau, advised Nationwide that he had two estimates on the repair work and would be submitting them. (Def.'s Ex. 2 at 10.) Based on the new estimates, Nationwide reached a settlement with plaintiff on its property damage claim. (Def.'s Br. at 6 (citing Def.'s Ex. 11).) Although plaintiff's counsel wrote in a letter dated December 27, 2002, that King expected the repair work to be done by February 1, 2003 (Def.'s Ex. 13), in another letter dated April 7, 2003, plaintiff's counsel notes that "[t]he repairs have been completed and Mr. King hopes to have the apartments rented no later than April 31, 2003." (Pl. Ex. 12.) However, plaintiff's evidence reveals

3

that the three apartments[5] were not rented until June 1, July 1, and August 8, all in 2003. (Pl. Exs. 20-22.)

**B.     Breach of Contract**

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293, 303 (Ala. 1999)).  Defendant argues that the undisputed facts show that the third factor, its own nonperformance, is not present here.  (Def.'s Br. at 9.)  Defendant's argument is essentially that it has not breached the contract by paying less than plaintiff believes is reasonable, and that it has paid to plaintiff an amount that is reasonable based on the documentation that plaintiff has given to it.  (*Id.* at 10 ("A thorough analysis of the Nationwide policy reveals not only that Nationwide complied with the pertinent provisions, but also the documentation submitted to support plaintiff's damage provides a lawful basis for Nationwide to dispute plaintiff's demands for further payment.").)

Plaintiff argues that "[t]he cause of the delay in the restoration of the subject premises was caused by the delay in the payment of the underlying claim."  (Pl. Br. at 12.)  King contends that he did not start the repairs earlier because he had not received any money from Nationwide, and he did not have sufficient money of his own to do the work.  (Pl. Ex. 33 at 56.)   Plaintiff further argues that Nationwide breached its insurance

---

[5]     After the fire, two of the apartments were consolidated into a single unit.

contract by only paying for three months rent on two units, despite the twelve month limit in the policy. (*Id.*)

Upon consideration of the evidence presented on defendant's Motion for Summary Judgment, the court concluded that a genuine issue of material fact remained for trial. Following a two day jury trial, the jury returned a verdict on June 9, 2005, in favor of the defendant on plaintiff's breach of contract claim.

**C.    The Bad Faith Refusal to Pay Claim**

The Alabama Court of Civil Appeals recently discussed this tort under Alabama law:

> "[The Alabama] [S]upreme [C]ourt set forth the elements necessary for a plaintiff to establish a bad-faith claim in *National Security Fire & Casualty Co. v. Bowen,* 417 So.2d 179 (Ala.1982); those elements are:
>
> "(a) an insurance contract between the parties and a breach thereof by the defendant;
> (b) an intentional refusal to pay the insured's claim;
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."

*United Servs. Auto. Ass'n v. Hobbs*, 858 So. 2d 966, 974 (Ala. Civ. App. 2003). Clearly, the third requirement, that there was no debatable reason for nonpayment, is not satisfied in this

case. Plaintiff's failure to provide Nationwide with valid leases on the apartments for the time at which the fire occurred gave Nationwide a legitimate reason to demand further documentation of plaintiff's losses. The relevant test provides:

> In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim, and, thus, entitled to recover on the contract claim as a matter of law.

*Nat'l Sec. Fire & Cas. Co. v. Coshatt*, 690 So. 2d 391, 394 (Ala. Civ. App. 1996) (quoting *Nat'l Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982)). "[I]f a fact issue makes a [judgement as a matter of law ("JML")] inappropriate, then the defendant is entitled to a JML on the plaintiff's bad-faith claim." *Shelter Mut. Ins. Co. v. Barton*, 822 So. 2d 1149, 1160 (Ala. 2001) (citing *Dutton*). Because plaintiff is not entitled to summary judgment on its contract claim, and because defendant has offered evidence of a legitimate or arguable reason for its refusal to pay plaintiff's claim for loss of business income, defendant's motion for summary judgment on the bad faith claim is due to be granted.

**DONE** this 10th day of June, 2005.

_Sharon Lovelace Blackburn_
_____
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE